## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
**BRENDAN A. HURSON**
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

September 6, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:     *James L. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
        Civil No. 23-1137-BAH

Dear Counsel:

On January 24, 2023, Plaintiff James L. ("Plaintiff") petitioned the United States District Court for the District of Kansas to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for benefits.  ECF 1.  That court granted Plaintiff's unopposed motion to transfer venue to this Court after Plaintiff moved to Maryland.  ECFs 10, 11.  After the case was transferred to this Court, it was referred to me with the parties' consent.  *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023).  I have considered the record in this case (ECF 6), the parties' dispositive filings[1] (ECFs 20 and 23), and Plaintiff's reply (ECF 24).  I find that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, I will DENY Plaintiff's motion, REVERSE the SSA's decision, and REMAND the case to the Commissioner for further consideration.  This letter explains why.

## I.      PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on August 31, 2021, alleging a disability onset of March 1, 2021.  Tr. 190–91.  Plaintiff's claim was denied initially and on reconsideration.  Tr. 86–90, 96–100.  On August 20, 2022, an Administrative Law Judge ("ALJ") held a hearing.  Tr. 33–59.  Following the hearing, on October 3, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame.  Tr. 13–32.  The Appeals Council denied Plaintiff's request for review, Tr. 1–7, so the ALJ's decision constitutes the final, reviewable decision of the SSA.  *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.     THE ALJ'S DECISION

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022.  Under the Standing Order, parties now file "briefs" instead of "motions for summary judgment."  Here, Plaintiff filed a motion for summary judgment and Defendant filed a brief.  ECFs 20, 23.

[2] 42 U.S.C. §§ 301 et seq.

James L. v. Kijakazi
Civil No. 23-1137-BAH
September 6, 2023
Page 2

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 1, 2021, the alleged onset date." Tr. 18. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease of the spine, hypertension, osteoarthritis of the knees, obesity, and bronchitis." Tr. 19. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "gastroesophageal reflux disease," "lower extremity swelling," "depression," "anxiety," and "posttraumatic stress disorder." *Id.* At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 21. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> lift and carry ten pounds frequently and twenty pounds occasionally, sit for six hours out of an eight-hour workday, stand for six hours out of an eight-hour workday, and walk for six hours out of an eight-hour workday. He can frequently climb ramps and stairs, but he should be limited to occasional stooping, kneeling, crouching, crawling, and climbing of ladders, ropes, or scaffolds. He should avoid even moderate exposure to unprotected heights or moving mechanical parts. He should avoid concentrated exposure to humidity, wetness, extreme cold, dust, odors, fumes, and pulmonary irritants.

Tr. 22. The ALJ determined that Plaintiff could perform past relevant work as an eligibility specialist (DOT[3] #195.267-010) and as a teller (DOT #211.362-018). Tr. 27. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 27–28.

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*James L. v. Kijakazi*
Civil No. 23-1137-BAH
September 6, 2023
Page 3

### III.   LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

On appeal, Plaintiff argues that: (1) the ALJ's decision "is contrary to" the holding of *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377 (4th Cir. 2021); (2) the ALJ's step-four finding erroneously omitted consideration of certain mental limitations; and (3) the ALJ did not "reasonably find that" Plaintiff could sustain an eight-hour work day because the ALJ failed to properly consider Plaintiff's self-described limitations and activities of daily living. ECF 20-2, at 3–20. Defendant counters that: (1) the ALJ's RFC evaluation complies with *Dowling* and is supported by substantial evidence; (2) Plaintiff had, at most, mild mental functional limitations which did not warrant RFC limitations; and (3) substantial evidence supported the ALJ's findings with respect to Plaintiff's subjective statements. ECF 23, at 6–18.

Because I find the argument dispositive, I begin by evaluating Plaintiff's third argument as it pertains to Plaintiff's activities of daily living. Plaintiff acknowledges that "a claimant's daily activities are 'fair game' in evaluating a disability claim[.]" ECF 20-2, at 17. But Plaintiff also contends that his "daily activities are consistent with the record and the ALJ's findings to the contrary consist of selective references to the record and improper and inapt conclusions from the evidence [they] did cite." *Id.* at 18. Thus, Plaintiff avers that the ALJ "failed to create 'an accurate and logical bridge' between the evidence and [their] rejection of [Plaintiff's] self-described limitations." *Id.* (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). I agree.

An ALJ evaluates a claimant's subjective symptoms using a two-part test. *See Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017). "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Id.* (citing 20 C.F.R. § 404.1529(b)). "Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." *Id.* (citing 20 C.F.R. § 404.1529(c)). This "determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects." *Id.* (citing 20 C.F.R. § 404.1529(c)(4)).

James L. v. Kijakazi
Civil No. 23-1137-BAH
September 6, 2023
Page 4

It is within an ALJ's discretion to discount a claimant's statements when the ALJ is faced with countervailing evidence that the claimant is performing daily activities which contradict the claimant's self-assessment.  *See Eiker v. Astrue*, No. CBD-11-3584, 2013 WL 2149755, at *5 (D. Md. May 15, 2013).  However, "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them."  *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original).  In this respect, the Court has recognized that an ALJ errs by rejecting a claimant's subjective complaints of debilitating pain solely because the claimant can perform the most basic of daily activities:

> "When assessing the effect of claimants' activities of daily living on their physical RFC, ALJs must be careful not to place too much emphasis on simple tasks that are insufficiently indicative of a claimant's ability to do work existing in the national economy."  *Eiker v. Astrue*, No. CIV.A. CBD-11-3584, 2013 WL 2149755, at *3 (D. Md. May 15, 2013).  "[A] claimant need not be constantly bedridden or completely incapacitated to be found disabled."  *Morgan v. Barnhart*, 142 F. App'x 716, 729 (4th Cir. 2005) (quoting *Trotten v. Califano*, 624 F.2d 10, 11–12 (4th Cir.1980)).  Individual or sporadic instances of activity do not necessarily demonstrate a person's ability to work on a sustained basis for eight hours per day.  *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.").  Further, the ability to engage in some light activity does not necessarily translate into the ability to do substantial gainful activity.  *See Morgan*, 142 F. App'x at 729 (finding improper the ALJ's adverse credibility judgment against a plaintiff who occasionally practiced needlepoint and crochet); *Higginbotham v. Califano*, 617 F.2d 1058, 1060 (4th Cir. 1980) ("The Secretary did not discharge his burden of proof that Higginbotham can do sedentary work by relying on the fact that she, at her own pace and in her own manner, can do her housework and shopping."); *McCoy v. Astrue*, No. 6:10-380-MBS, 2011 WL 2418681, at *12 (D.S.C. May 2, 2011) (finding improper an ALJ's adverse credibility judgment against a claimant who would load dishwasher and fold clothes, and went to Aruba on his honeymoon), *report and recommendation adopted*, No. 6:10-0380-MBS, 2011 WL 2413177 (D.S.C. June 13, 2011); *Rainey v. Astrue*, No. 7:09-CV-74-BO, 2010 WL 2402891, at *2 (E.D.N.C. June 11, 2010) (rejecting ALJ's reliance on plaintiff's ability to do housework "at her own pace with periods where no work was performed").

*Coreen T. v. Kijakazi*, No. CBD-19-3372, 2022 WL 252961, at *7 (D. Md. Jan. 26, 2022).

Here, at step three, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  Tr. 23.  The ALJ then noted that "[b]ecause a claimant's symptoms can sometimes suggest a greater level of

*James L. v. Kijakazi*
Civil No. 23-1137-BAH
September 6, 2023
Page 5

severity of impairment than can be shown by the objective medical evidence alone, the undersigned must consider, in addition to the objective medical evidence, the claimant's . . . daily activities[.]"  Tr. 24.  The ALJ then provided the following analysis of Plaintiff's "wide range of" daily activities:

> The claimant's activities of daily living are consistent with the above residual functional capacity and inconsistent with his alleged limitations and allegation of disability.  According to his functional reports, he provides for his own personal care with minimal assistance, cleans, does his laundry, drives, shops, mows the lawn, and manages his own finances (Exhibits 1E and 6E).  During the hearing, he testified he could prepare a light meal and he drives, shops, and does the laundry. The claimant's wide range of daily activities leads the undersigned to find the claimant's allegedly disabling impairments are not as significant as alleged.

Tr. 25.  The ALJ's assessment of Plaintiff's daily activities constitutes error for several reasons. First, most of the activities accurately described by the ALJ are basic in nature, with some requiring nothing more than minimal attention (i.e., managing personal finances) and others requiring only a modicum of physical exertion (i.e., driving, shopping, doing laundry, and caring for oneself). This Court has recognized that absent additional explanation by an ALJ, these types of activities lack probative value in assessing a claimant's mental and physical abilities to sustain full-time work.  *See, e.g.*, *Janice M. v. Kijakazi*, No. BAH-21-1715, 2022 WL 4120790, at *5 (D. Md. Sept. 9, 2022) (recognizing that paying bills does not require "more than a fleeting moment of attention" and that maintaining personal care, preparing light meals, driving, shopping in stores, utilizing a computer, and reading daily do not require "more than minimal physical exertion.").  Accordingly, absent a more detailed explanation by the ALJ in this case, it is unclear how the performance of any of these activities contradicts Plaintiff's subjective complaints of pain.  *See* Tr. 23 (noting, among other things, that Plaintiff complains of back and knee pain, issues with "lifting, squatting, bending, reaching, hearing," and other physical functions, and that he testified that he "could stand for thirty minutes at a time, walk for thirty minutes at a time, and sit for forty minutes at a time.").

In addition to their failure to explain how these *types* of activities contradict Plaintiff's subjective complaints, the ALJ also failed to consider "the *extent* to which" Plaintiff can perform these activities.  *Woods*, 888 F.3d at 694 (emphasis in original).  For instance, the ALJ noted that Plaintiff is able to care for himself "with minimal assistance[.]"  Tr. 25.  However, Plaintiff states in his October 2021 function report that he requires assistance with dressing himself and washing his back due to "chronic back pain."  Tr. 223.  Plaintiff also occasionally requires a reminder to take his medicine.  Tr. 224.  While the ALJ correctly notes that Plaintiff can prepare a light meal, the October 2021 function report states that other family members prepare Plaintiff's meals.  *Id.* Moreover, Plaintiff assists his family with cleaning and laundry "on a limited basis," and cleaning is done only once per week.  *Id.*  Plaintiff's function report also indicates that he drives, but only "occasionally," and that his family "handles all the shopping."[4]  Tr. 225.

---

[4] With respect to Plaintiff's ability to mow his lawn, both the ALJ's decision and the record lack clarity regarding the extent to which Plaintiff can perform this task.  The record is bare as to the

*James L. v. Kijakazi*
Civil No. 23-1137-BAH
September 6, 2023
Page 6

These qualifying statements reflect Plaintiff's position that many of the activities he performs are curtailed due to his impairments. ECF 20-2, at 17. While the ALJ need not have accepted these statements at face value, the ALJ was nonetheless required to evaluate them. *See Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) (affirming reversal of ALJ's decision where the ALJ "disregarded" a claimant's "qualification of his activity levels" because an ALJ "may not select and discuss only that evidence that favors his ultimate conclusion . . . .") (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Because the ALJ failed to evaluate these qualifying statements, the ALJ's decision lacks "an accurate and logical bridge" from the evidence to the decision's conclusions. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 100 (4th Cir. 2020) (holding that substantial evidence did not support an ALJ's conclusion that a claimant's subjective complaints were inconsistent with her daily activities because the ALJ "selectively cited evidence concerning tasks which [the claimant] was capable of performing" and "improperly disregarded" her qualifying statements) (quoting *Hines*, 453 F.3d at 565).

Because the ALJ erroneously evaluated Plaintiff's activities of daily living, substantial evidence does not support the ALJ's decision. *See id.* Therefore, I will remand Plaintiff's case to the SSA. On remand, the ALJ must provide a more robust analysis of whether the type and extent of the activities which Plaintiff can perform suggests an ability to "engage in full-time work on a sustained basis." *Id.* at 101. The ALJ should also consider further developing the record if the extent to which Plaintiff can perform a given activity is unclear. In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct. Because the case is being remanded on other grounds, I need not also address Plaintiff's other arguments. On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion.

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 20, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge

---

size of Plaintiff's lawn and the level of exertion required to mow it. Further, Plaintiff noted that he must "take [his] time" when mowing the lawn, Tr. 264, implying that the activity is not completed with haste.